UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES MINCEY A/K/A CHARLES LAQUE,<br><br>        Petitioner,<br><br>    v.<br><br>BEVERLY HASTINGS, et al.,<br><br>        Respondents. | Civil No. 14-1527 (NLH)<br><br>**OPINION** |

**APPEARANCES:**

   CHARLES MINCEY A/K/A CHARLES LAQUE, #294533C
   East Jersey State Prison
   Lock Bag R
   Rahway, NJ 07065
       *Pro Se Petitioner*

   JOHN J. SANTOLIQUIDO, Assistant Prosecutor
   JAMES P. MCCLAIN, ATLANTIC COUNTY PROSECUTOR
   P.O. Box 2002
   Mays Landing, NJ 08330
       *Attorneys for Respondents*

**HILLMAN, District Judge:**

   Charles Mincey filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Atlantic County, on July 15, 2004, imposing an aggregate 25-year term of

imprisonment, with an 85% period of parole ineligibility, after he pled guilty to first-degree manslaughter and first-degree aggravated assault.  The State filed an Answer and the record, and Mincey filed a Reply.  After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.   BACKGROUND

A.   The Crime

The Appellate Division of the Superior Court of New Jersey summarized the facts of the case this way:

> In the early morning of July 8, 2001, [Mincey], then nineteen years of age, was a passenger in a crowded taxi van with several other individuals who were being transported into Atlantic City.  Among the passengers were seventeen-year old codefendant [Howard] Reed, Fritz Charlestin, Steve Lemus, and the taxi van driver Christopher Soyer.
>
> When the taxi van arrived at a parking lot adjacent to the Jacob's Terrace apartments an armed robbery ensued.  Although first directed at Soyer, the robbery quickly escalated to involve the remaining passengers.  [Mincey's] plea allocution revealed that he had brandished a firearm, pointed it in the direction of Charlestin and Lemus, and fired the weapon several times . . .  [Charlestin] suffered fatal gunshot wounds, and ultimately perished at the Atlantic City Medical Center three days later.

*State v. Mincey*, 2011 WL 31293 at *2 (N.J. Super. Ct., App. Div., Jan. 6, 2011).

2

B.  The State Court Proceedings

Sometime in 2001 a grand jury sitting in the Superior Court of New Jersey, Law Division, Atlantic County, issued a 15-count indictment against Charles Mincey and Howard Reed charging them with the first-degree murder of Fritz Charlestin, first-degree robbery, and other crimes.  On March 25, 2004, Reed pled guilty to the first-degree robbery of Christopher Soyer, the cab driver.  During his plea allocution, Reed stated that he displayed a 9 millimeter gun to Soyer, he gave the gun to Mincey, and then Reed got out of the cab.  (ECF No. 6-11 at 9.)

Mincey's trial began two months later on May 24, 2004.  After two days of testimony, on May 27, 2004, the parties agreed to a plea agreement whereby Mincey pled guilty to first-degree aggravated manslaughter and second-degree aggravated assault in exchange for dismissal of the other charges in the indictment and the State's recommendation for a maximum aggregate sentence of 25 years in prison.  The Appellate Division described the testimony at Mincey's abbreviated trial as follows:

> Defendant's trial began on May 25, 2004.  During two days of testimony, the taxi driver, Christopher Soyer, identified [Mincey] as the instigator during the robbery, although Soyer did not actually see [Mincey] shoot Charlestin, who was sitting in the back of the van.  Lemus, who was sitting next to Charlestin during the shooting, testified that [Mincey] shot Charlestin and then shot at Lemus, who escaped injury by ducking

3

> behind the seat. Lemus identified [Mincey], with "100%" certainty, as the shooter. Another witness, who was well-acquainted with [Mincey] and Reed, testified that she had been a passenger in the van but departed before the robbery occurred. She testified that [Mincey] and Reed were both passengers in the van, and that the two men were dressed differently from each other and did not look alike.

*State v. Mincey*, 2013 WL 195279 at *1 (N.J. Super. Ct., App. Div., Jan. 18, 2013).

On June 4, 2004, the same judge who presided over Mincey's trial sentenced Reed to a ten-year term of imprisonment in accordance with his plea agreement. (ECF No. 6-12.) On July 9, 2004, that same judge sentenced Mincey to the agreed upon aggregate 25-year term of imprisonment. (ECF No. 6-7.) Mincey appealed the sentence, and by order filed on February 8, 2006, the Appellate Division affirmed. (ECF No. 6-17 at 68.)

On June 18, 2007, Mincey signed a pro se state petition for post-conviction relief, which the trial court filed on June 26, 2007. (ECF No. 6-17 at 69.) For the reasons expressed on the record on June 25, 2009, the trial court denied the post-conviction relief petition without an evidentiary hearing. The order was filed on July 6, 2009. (ECF No. 6-17 at 117.) Mincey appealed, and on January 6, 2011, the Appellate Division vacated the order and remanded for an evidentiary hearing "limited to the issue of the exculpatory evidence of codefendant Reed and

4

that which may be developed form Soyer, if any." *State v. Mincey,* 2011 WL 31293 *5 (N.J. Super. Ct., App. Div., Jan. 6, 2011). On June 16, 2011, the Supreme Court of New Jersey denied certification. *See State v. Mincey,* 207 N.J. 35 (2011) (table).

The trial court conducted the evidentiary hearing on July 6, 2011, hearing testimony from Howard Reed, Mincey, and his trial attorney. The trial court denied the post-conviction relief petition in and order and opinion dated On July 26, 2011. (ECF Nos. 7-6, 7-5.) Mincey appealed, and on January 18, 2013, the Appellate Division affirmed. *See State v. Mincey,* 2013 WL 195279 (N.J. Super. Ct., App. Div., Jan. 18, 2013). On September 10, 2013, the Supreme Court of New Jersey denied certification. *State v. Mincey,* 215 N.J. 486 (2013) (table).

C.   Procedural History of § 2254 Petition

Mincey signed his § 2254 Petition on February 14, 2014, but his cover letter is dated March 2, 2014. The Clerk received the Petition on March 10, 2014.[1] The Petition raises the following grounds for relief:

---

[1] The Court notified Mincey of his right to amend the Petition to include all available federal claims in accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and he declined to do so. (ECF No. 2.)

5

> Ground One:  THE STATE COURT'S RULING THAT THE PETITIONER WAS NOT DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW DURING THE PLEA PROCEEDINGS WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW[.] THEREFORE[,] THE WRIT SHOULD ISSUE.
>
> Ground Two:  THE STATE COURT'S RULING THAT THE PETITIONER WAS NOT DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW DURING THE TRIAL BY FAILING TO INTERVIEW HOWARD REED WHO EXCULPATED AND EXONERATED PETITIONER WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE DETERMINATION OF THE FACTS[.] THEREFORE[,] THE WRIT SHOULD ISSUE.

(Memorandum at ECF No. 1-2 at 43-47.)

The State filed an Answer arguing that Mincey is not entitled to habeas relief on the merits of his claims, and Mincey filed a Reply arguing that he is.  (ECF Nos. 6, 10.)

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court

6

adjudicated petitioner's federal claim on the merits,[2] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  *See Pinholster*, 131 S.Ct. at 1398.

---

[2] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."  *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.  *Woods*, 135 S.Ct. at 1376 (quoting *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014), and *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*, 529 U.S. at 413.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of

8

the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### III.  DISCUSSION

In the two grounds raised in his § 2254 Petition, Mincey asserts that his trial attorney was constitutionally deficient in failing to interview co-defendant Howard Reed and in strongly advising Mincey to plead guilty. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See *Strickland v. Washington*, 466 U.S. 668, 687

9

(1984). A defendant must "show that counsel's representation fell below an objective standard of reasonableness" *id.* at 687-88, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (citations omitted). To establish ineffective assistance of counsel in the plea negotiation context, Mincey must show: (1) counsel's advice regarding the plea offer was not "'within the range of competence demanded of attorneys in criminal cases,'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)), and (2) "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85 (2012) (quoting *Hill,* 474 U.S. at 59).

A.  Failure to Interview Reed

Mincey asserts that his trial attorney was constitutionally deficient in "failing to interview Howard Reed who exculpated and exonerated Petitioner[.]" (ECF No. 1 at 24.) To be sure, Reed's affidavit dated September 15, 2006, which was attached to Mincey's pro se petition for post-conviction relief, states that "Charles Mincey had nothing to do with the robbery or shooting

10

of Fritz Charlestin.  He did not help me in any way.  He was there and I believe that's why he was picked in the line up.  I could not say anything about the truth because I did not want to get myself any more time."  (ECF No. 6-17 at 83.)  Although Reed's affidavit states that Mincey had nothing to do with the robbery and murder, it also states unequivocally that Reed would not have exonerated Mincey had he testified at Mincey's trial in 2004 "because [Reed] did not want to get [him]self any more time."  *Id.*  Reed's plea allocution, two months before Mincey's trial, confirms that Reed's trial testimony, if it had been elicited, would not have been exculpatory.  During the allocution, Reed stated that he robbed Soyer by displaying a handgun and that Reed then gave the handgun to Mincey and left the taxi.  (ECF No. 6-11 at 6-8.)

In affirming the denial of Mincey's post-conviction relief petition, the Appellate Division found the following facts with respect to codefendant Howard Reed:

> Codefendant Reed entered a plea of guilty [to first-degree robbery] approximately two months before the start of [Mincey's] trial.  As part of Reed's plea allocution he also admitted to wielding a firearm, largely to frighten Soyer while [Mincey] rummaged for the driver's cash and belongings.  Then, Reed testified that he handed the firearm to [Mincey] and left the taxi van.

11

> Codefendant Reed was not sentenced until June 4, 2004, several days after the conclusion of defendant's abridged trial. Although he had been called as a witness at trial, he provided no testimonial evidence. Instead, with the permission of the court, the State simply asked him to stand next to defendant so that the jury could observe their physical attributes, side by side. Other than taking the oath and acknowledging that he was Howard Reed, he did not utter a word to the jury, and there was no cross-examination by defense counsel.

*State v. Mincey*, 2011 WL 31293 at *2.

The Appellate Division also found that Reed "confirmed on cross-examination that he would not have testified to that exculpatory version of events at [Mincey's] trial, for fear of losing the benefit of his plea bargain." *State v. Mincey*, 2013 WL 195279 at * 2 (N.J. Super. Ct., App. Div., Jan. 18, 2013). The Appellate Division concluded that defense counsel was not ineffective in failing to interview or call Reed because "Reed would not have given favorable testimony even if defense counsel had attempted to cross-examine him or had called him as a witness." *State v. Mincey*, 2013 WL 195279 at *5.

Section 2254(e)(1) requires this Court to presume the correctness of the Appellate Division's finding that, if Mincey's attorney had interviewed Reed or had called him to testify at Mincey's trial, Reed would have testified that he brandished the gun, gave the gun to Mincey and exited the taxi.

12

Mincey has not rebutted these findings by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Given Reed's post-conviction relief testimony and his affidavit, both of which indicated that Reed's trial testimony would have been consistent with his plea allocution and would not have exculpated Mincey, Mincey has not shown that the Appellate Division unreasonably determined the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)((2).  In addition, the Appellate Division did not unreasonably apply *Strickland* or other Supreme Court precedent when it found that counsel was not deficient in failing to interview Reed or to call him as a trial witness, given its finding that Reed's testimony would not have helped Mincey.  *See* 28 U.S.C. § 2254(d)(1).

B.   Advising Mincey to Plead Guilty

Mincey also asserts that trial counsel was deficient in strongly advising him to plead guilty after hearing two and one-half days of testimony from the prosecution's case.  A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [appropriate] standards." *Tollett v. Henderson*, 311 U.S. 258, 268 (1973).  Due process requires that a guilty plea is

13

"voluntary" and that the defendant's waiver of his constitutional rights is "knowing, intelligent, [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). As the Court explained in *McMann v. Richardson*, 397 U.S. 759 (1970):

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt . . . ? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*McMann*, 397 U.S. at 769-770.

Moreover, "an accused is entitled to rely upon his counsel . . . to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948); *accord Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999)

("A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable.") (citations and internal quotation marks omitted) (emphasis in original); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (observing that a defendant "is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting *Von Moltke*, 332 U.S. at 721).

In this case, the Appellate Division found the following facts with respect to counsel's advice to plead guilty:

> On May 27, 2004, when [Mincey] pled guilty, the State had just presented eyewitness testimony that he was the ringleader in the robbery and that he was the shooter. Even if the jury found that he was not the shooter, he was facing a likely conviction for felony murder, and the probability of a very long sentence. As the judge noted at the sentencing, at age nineteen, [Mincey] already had six juvenile adjudications and eleven adult arrests, including a pending out-of-state charge for assault with a deadly weapon. Under all the circumstances, we cannot find that [defense counsel] rendered ineffective assistance of counsel in advising [Mincey] to accept a twenty-five year NERA sentence rather than risk a murder conviction and a life sentence.

*State v. Mincey*, 2013 WL 195279 at *5.

Based on these findings, the Appellate Division concluded that "Reed's testimony [at the post-conviction relief

15

evidentiary hearing] clearly established that [Mincey's] trial counsel was not ineffective when he strongly advised [Mincey] to accept the plea bargain the State was offering." *State v. Mincey*, 2013 WL 195279 at * 5.

This Court is required to presume the correctness of the Appellate Division's factual findings, as Mincey has not rebutted them by clear and convincing evidence; nor has Mincey shown that they were unreasonable in light of the evidence presented. *See* 28 U.S.C. §§ 2254(d)(1) and (e)(2). In addition, in light of these findings, the Appellate Division did not unreasonably apply *Strickland* or other Supreme Court precedent when it held that Mincey's trial attorney was not constitutionally deficient in strongly advising him to plead guilty instead of risking a life sentence for murder. Mincey is not entitled to habeas relief on this ground under 28 U.S.C. § 2254(d)(1).

### IV. CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the

16

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition as time barred is correct.  See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## V.   CONCLUSION

This Court will dismiss the Petition with prejudice and deny a certificate of appealability.  An Order consistent with this Opinion will be filed.

s/Noel L. Hillman
**NOEL L. HILLMAN, U.S.D.J.**

Dated:  April 29, 2016

At Camden, New Jersey

17